UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRUCE J. KARAM,

                    Plaintiff,

v.                                                              6:23-CV-0020
                                                                (GTS/MJK)
UTICA CITY SCHOOL DISTRICT; BOARD
OF EDUCATION OF THE UTICA CITY SCHOOL
DISTRICT; JOSEPH HOBIKA, JR.; DANIELLE N.
PADULA; TENNILLE KNOOP; JAMES PAUL;
and BRIAN NOLAN,

                    Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

HANCOCK ESTABROOK, LLP                                GIANCARLO FACCIPONTE, ESQ.
   Counsel for Plaintiff                              FRANK W. MILLER, ESQ.
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202

WILSON ELSER                                          CHRISTOPHER A. PRIORE, ESQ.
   Counsel for Utica Defendants and Nolan             BENJAMIN MEHIC, ESQ.
200 Great Oaks Boulevard, Suite 228
Albany, NY 12203

LONGSTREET AND BERRY, LLP                             MARTHA L. BERRY, ESQ.
   Counsel for Defendant Hobika
P.O. Box 249
Fayetteville, NY 13066

LAW OFFICE OF ZACHARY C. OREN, ESQ.                   ZACHARY C. OREN, ESQ.
   Counsel for Defendant Padula
401 Rutger Street
Utica, NY 13501

WARD ARCURI FOLEY & DWYER                             DOMINIQUE T. ARCURI, ESQ.
   Co-Counsel for Defendant Padula                    MICHAEL A. ARCURI, ESQ.
84 Genesee Street
New Hartford, NY 13413

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Bruce J. Karam ("Plaintiff") against the Utica City School District ("District"), Board of Education of the Utica City School District ("Board of Education"), Board of Education President Joseph Hobika, Jr., Board of Education Vice-President Danielle N. Padula, Board of Education Member Tennille Knoop, Board of Education Member James Paul, and District Acting Superintendent Brian Nolan (collectively "Defendants"), are the following five motions: (1) a motion to dismiss for failure to state a claim brought by Defendants District, Board of Education, and Nolan ("Utica Defendants") pursuant to Fed. R. Civ. P. 12(b)(6); (2) a motion for judgment on the pleadings brought by Defendant Padula pursuant to Fed. R. Civ. P. 12(c); (3) a motion to dismiss for failure to state a claim brought by Defendant Hobika pursuant to Fed. R. Civ. P. 12(b)(6); (4) a motion for summary judgment brought by Defendant Padula pursuant to Fed. R. Civ. P. 56; and (5) a cross-motion for summary judgment filed by Plaintiff pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 26, 35, 75, 84, 107.)  For the reasons set forth below, Defendants' motions to dismiss and for judgment on the pleadings are granted as to Plaintiff's federal claims, the remaining motions for summary judgment are denied as moot as to Plaintiff's federal claims and denied without prejudice as to Plaintiff's state-law claims against Defendant Padula, and Plaintiff is given fourteen days from the entry of this Decision and Order to show cause why the moving Defendants' arguments regarding Plaintiff's federal claims against them should not also be applied to, and result in the dismissal of, Plaintiff's federal claims against Defendants Knoop and Paul.

2

# I.    RELEVANT BACKGROUND

## A.    Plaintiff's Amended Complaint

In his Amended Complaint, Plaintiff asserts seven claims: (1) a state-law claim against all Defendants other than Nolan[1] for breach of contract related to an employment contract he has with Defendant School District ("First Claim"); (2) a federal claim against all Defendants for a violation of his due process rights with stigmatizing statements pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment ("Second Claim"); (3) a federal claim against all Defendants for a violation of his procedural due process rights pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment; (4) a federal claim against all Defendants for a violation of his substantive due process pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment; (5) a federal claim against all Defendants for retaliation in violation of 42 U.S.C. § 1983 and the First Amendment; (6) a state-law claim against Defendant Nolan[2] for tortious interference with his employment contract;

---

[1]    Although this claim appears to be expressly asserted against "Defendants" (meaning *all* Defendants), Plaintiff's opposition to the Utica Defendant's motion to dismiss appears to acknowledge that this claim cannot be asserted against Nolan because Plaintiff did not contract with Nolan but with the remaining Defendants. (*Cf.* Dkt. No. 38, at 36 [page "31," arguing, "Plaintiff does not, and cannot, offer a tortious interference with contract claim against the party he is contracted with in the District. But he does against Brian Nolan"]; Dkt. No. 86, Attach. 2 [Ex. B to Plf.'s Am. Compl., attaching Plf.'s employment agreement with "the Board of Education of the Utica City School District"]; Dkt. No. 86, at ¶ 93 [alleging that his employment contract was "with the Utica City School District"].)

[2]    Although this claim is expressly asserted against "all Defendants," again, Plaintiff's opposition to the Utica Defendant's motion to dismiss appears to acknowledge that this claim can be asserted against Defendant Nolan only as the only party with whom Plaintiff did not contract. (*See* Dkt. No. 38, at 36 [page "31," arguing, "Plaintiff does not, and cannot, offer a tortious interference with contract claim against the party he is contracted with in the District. But he does against Brian Nolan"]; Dkt. No. 86, Attach. 2 [Ex. B to Plf.'s Am. Compl., attaching Plf.'s employment agreement with "the Board of Education of the Utica City School District"].)

and (7) a state-law claim against Defendant Nolan for defamation per se. (Dkt. No. 86.)[3] The substance of Plaintiff's allegations will be discussed in greater detail as required when assessing the parties' motions to dismiss and motion for judgment on the pleadings.

### B.  Parties' Briefing on the Pending Motions

Before proceeding to a summary of the arguments presented by Defendants' pending motions to dismiss and for judgment on the pleadings, the Court makes two observations.

First, because the Court finds merit to Defendants' pending motions to dismiss for failure to state a claim and motion for judgment on the pleadings, the Court need not, and will not (for the sake of brevity), summarize the arguments (and undisputed material facts) presented by the parties' motions for summary judgment.

Second, the Court has continued to refer to the below-summarized motions as ones "to dismiss for failure to state a claim" and "for judgment on the pleadings" even though (1) Defendant Padula's motion "for judgment on the pleadings," although initially filed after her Answer had been filed (at Dkt. No. 22), was subsequently effectively transformed into a motion to dismiss for failure to state a claim by Plaintiff's filing of an Amended Complaint (to which Padula filed no Answer), and (2) Defendant Hobika's "motion to dismiss for failure to state a

---

[3]     The Court notes that Plaintiff's "Amended Complaint" both amends *and supplements* his original Complaint by providing additional factual details, particularly relating to events that occurred following the filing of the original Complaint, including his subsequent termination from his position as Superintendent on November 27, 2023. (*Compare* Dkt. No. 1 *with* Dkt. No. 86; *see also* Dkt. No. 65, Attach. 6 [attaching redline-strikeout version of Plf.'s proposed Am. Compl.].) The Court notes also that, although two of Defendants' motions initially challenged the pleading sufficiency of Plaintiff's original Complaint, those Defendants who filed those motions were permitted to, and did, supplement their motion papers so as to challenge the pleading sufficiency of Plaintiff's Amended Complaint. (Dkt. Nos. 85, 103, 104.)

claim," although originally misnamed because it was filed after his Answer (Dkt. No. 21), was subsequently rendered correctly named by Plaintiff's filing of an Amended Complaint (to which Hobika filed no Answer). As explained below in Part II of this Decision and Order, the standard governing both types of motion is the same.

### 1.    Utica Defendants' Motion to Dismiss[4]

#### a.    Utica Defendants' Memorandum of Law

Generally, in their motion to dismiss, the Utica Defendants make eight arguments. (Dkt. No. 26, Attach. 6.) First, the Utica Defendants argue that Plaintiff's claim for breach of employment contract should be dismissed for failure to state a claim because (a) he failed to allege which specific provisions of that agreement were purportedly breached, and (b) provisions in the contract regarding "charges" have not been triggered by Defendants' placement of Plaintiff on administrative leave. (*Id.* at 14-19.) More specifically as to the second of these reasons, Defendants argue that Plaintiff's contract requires a certain amount of advanced notice only where there are charges of misconduct against him that could result in termination, but that Plaintiff has in fact not been the subject of any formal charges; rather the choice to place him on administrative leave was based on complaints of which Plaintiff was promptly notified. (*Id.* at 16-17.) They argue further that they had the right to place Plaintiff on administrative leave because there is no provision in his employment agreement that prevents that action where Plaintiff has been accused of inappropriate workplace behavior, and New York Education Law

---

[4]    Although the parties' pre-supplemental briefs assert arguments regarding the claims in Plaintiff's original Complaint, the Court finds those arguments to sufficiently regard the claims in Plaintiff's Amended Complaint to warrant summary below in Parts I.B.1.a., I.B.1.b., and I.B.1.c. of this Decision and Order.

expressly permits a board of education to place employees on administrative leave during the pendency of an investigation or disciplinary charges. (*Id.* at 18-19.)

Second, the Utica Defendants argue that Plaintiff's procedural due process claim must be dismissed because (a) he has failed to state a claim given that being placed on paid administrative leave did not deprive him of a property interest, (b) he was not constitutionally entitled to a pre-suspension hearing and his due process rights were not violated given that, again, he was suspended with pay and did not suffer any financial loss, and (c) in any event, Plaintiff availed himself of a post-deprivation remedy by commencing an Article 78 proceeding and therefore has in fact been provided due process. (*Id.* at 19-25.)

Third, the Utica Defendants argue that Plaintiff's substantive due process claim also must be dismissed because (a) it is subsumed by his procedural due process claim, (b) he cannot establish a constitutional right to be free from being placed on paid administrative leave, and (c) placing Plaintiff on paid administrative leave was not conscience-shocking or arbitrary given the fact that the choice to do so was based on complaints of workplace misconduct (*Id.* at 25-29.)

Fourth, the Utica Defendants argue that Plaintiff has failed to state a "stigma plus" due process claim because (a) he has failed to plead particular statements that were allegedly stigmatizing beyond Defendants merely mentioning that there was an internal investigation, and (b) he has failed to allege that he was subjected to any material state-imposed burden as a result of any statements given that placement on administrative leave does not satisfy that burden. (*Id.* at 30-32.)

Fifth, the Utica Defendants argue that Plaintiff's claim of First Amendment retaliation should be dismissed because (a) he has not identified what speech provides the basis for that claim, (b) any speech he might be construed to have alleged is not protected speech given that he is a public employee who was speaking on a matter of private concern (i.e., his employment) and was speaking to address a personal grievance, and (c) he did not suffer any adverse employment action by being placed on paid administrative leave. (*Id.* at 32-38.) As to the existence of any protected speech, the Utica Defendants argue that filing the Article 78 petition does not constitute protected speech because that filing occurred after he was placed on administrative leave and addressed a personal grievance rather than a matter of public concern. (*Id.* at 35-38.)

Sixth, the Utica Defendants argue that Plaintiff's claim for tortious interference with his employment contract must be dismissed because they are parties to that contract and therefore cannot be held to have induced a breach of it, and because he has not alleged any breach of that contract or alleged the ability to show any resulting damages. (*Id.* at 39-42.)

Seventh, the Utica Defendants argue that Plaintiff's claim for defamation per se should be dismissed against Defendant Nolan because Plaintiff has failed to allege any particular words or statements that were defamatory, has not alleged that any such statements were false, and has not alleged facts plausibly suggesting the element of malice. (*Id.* at 43-45.) The Utica Defendants further argue that, even if such a claim could lie against Defendant Nolan, he is entitled to absolute immunity because he was acting in the capacity as superintendent of the school district when the alleged statements were made. (*Id.* at 45-47.)

Eighth, the Utica Defendants argue that, to the extent many of his claims already discussed were asserted against Defendant Nolan in his individual capacity, such claims must fail because he was not involved in the School Board's decision to place Plaintiff on administrative leave. (*Id.* at 47-48.)

### b.  Plaintiff's Opposition Memorandum of Law

Generally, in opposition to the Utica Defendants' motion, Plaintiff makes eight arguments. (Dkt. No. 38.)  First, Plaintiff argues that the Court can and should take judicial notice of the existence of certain negative press coverage related to relevant issues involving Plaintiff, without having to assess the truth of their contents. (*Id.* at 7-8.)

Second, Plaintiff argues that he has plausibly stated a breach-of-contract claim. (*Id.* at 9-19.)  More specifically, Plaintiff argues that, contrary to the Utica Defendants' assertions, the Complaint cites provisions in the employment contract that require the Utica Defendants to (a) promptly and confidentially notify him of any complaints of misconduct against him, and (b) provide him with (i) 30 days' notice, discussion, and attempt at resolution of any complaints that could constitute an offense before taking any action, (ii) written charges for any complaint that has been determined to likely constitute an offense that merits discharge, (iii) a 15-day period to answer any written charges and (iv) the right to request a full hearing. (*Id.* at 10-17.)  Plaintiff further argues that his placement on administrative leave, even with pay, was a violation of his contract and an adverse action in this case because (a) it occurred without any investigation and "in a manner which satisfies the elements of his stigma-plus claim" by "removing a special status conferred to him by his contract" and exposing him to public stigma, and (b) it prevented him from obtaining materials from his office to defend himself. (*Id.* at 17-19.)

8

Third, Plaintiff argues that he has stated a procedural due process claim. (*Id.* at 19-26.) Specifically, Plaintiff argues that his employment contract conferred upon him a special status "guarding against degradation of his ability to continue in his position and profession" through certain procedures related to complaints that constitutes a legally cognizable property interest, as well as that damage to his "good name, reputation, honor, or integrity" that hamper his ability to continue in his chosen profession gives rise to a liberty interest. (*Id.* at 19-25.) Plaintiff further argues that the Article 78 proceeding did not provide an adequate remedy here because he was not permitted to bring the types of claims in that proceeding that he now raises before this Court. (*Id.* at 25-26.)

Fourth, Plaintiff argues that he has also stated a substantive due process claim. (*Id.* at 27-28.) More specifically, Plaintiff argues that this claim is not subsumed by his other due process claim or his stigma-plus claim because it alleges specifically that the deprivation of his contractual rights was arbitrary and conscious-shocking. (*Id.*)

Fifth, Plaintiff argues that he has stated a valid stigma-plus claim because he has alleged that he was subjected to a public employment action without any required pre-deprivation due process and suffered harm to his reputation as it pertained to his career. (*Id.* at 28-34.) Plaintiff argues that he was not required to plead specific statements regarding this claim. (*Id.* at 29-30.)

Sixth, Plaintiff argues that he has stated a valid claim for retaliation under the First Amendment. (*Id.* at 34-36.) Specifically, Plaintiff argues that retaliation for asserting violations of New York's Open Meetings Law in an Article 78 proceeding is a matter of public concern, and that he has alleged that he was retaliated against after filing that proceeding in that Defendant

9

Nolan thereafter "gave a speech containing the various serious complaints" and started the "media blitz" that caused him injury. (*Id.* at 35-36.)

Seventh, Plaintiff clarifies in response to the Utica Defendants' argument that his tortious interference claim is intended to be asserted against only Defendant Nolan, who made false defamatory statements about Plaintiff designed to interfere with his employment as Superintendent. (*Id.* at 36-37.)

Eighth, Plaintiff argues that he has stated a claim for defamation per se against Defendant Nolan because Plaintiff has pointed to specific defamatory statements and has alleged both actual damages and malice. (*Id.* at 37-40.) He further argues that, because he has alleged facts suggesting that the statements were not made within the scope of his employment, Defendant Nolan would not be entitled to absolute immunity. (*Id.* at 40.)

### c.    Utica Defendants' Reply Memorandum of Law

Generally, in their reply, the Utica Defendants make six arguments. (Dkt. No. 41, Attach. 2.) First, the Utica Defendants argue that Plaintiff's breach-of-contract claim must be dismissed. (*Id.* at 8-14.) More specifically, they argue that (a) this claim is barred by the doctrine of collateral estoppel because it was already decided in the Article 78 proceeding, and (b) he has failed to state a claim for breach of contract because he was given notice of the complaints against him that led to his administrative leave, he has not pled any pecuniary damages relating from this action, and no formal charges have been brought against him. (*Id.*)

Second, the Utica Defendants argue that Plaintiff has failed to state a claim for tortious interference against Defendant Nolan because Plaintiff does not include any allegations

10

regarding how Defendant Nolan allegedly interfered with Plaintiff's contract with the School Board, and his accusations that Defendant Nolan made statements to the press after Plaintiff was placed on administrative leave are immaterial to this claim and are unsupported by factual allegations plausibly suggesting that Defendant Nolan was not (a) acting as an agent of the School Board when making those statements and (b) a third party to Plaintiff's employment contract. (*Id.* at 14-15.)

Third, the Utica Defendants argue that Plaintiff has failed to state a claim for a violation of his procedural due process rights because (a) he was not afforded a "special status" through his employment contract and was not deprived of any protected property interest by being placed on paid administrative leave, (b) his procedural due process claim is nearly identical to his stigma-plus claim and he has not plausibly alleged any liberty interest that was infringed, and (c) the Article 78 proceeding provided an adequate post-deprivation remedy, even if a deprivation was found in that proceeding to have occurred. (*Id.* at 16-23.)

Fourth, the Utica Defendants argue that Plaintiff has failed to state a claim for substantive due process because (a) the choice to place him on paid administrative leave was neither conscious-shocking nor arbitrary based on the written complaints made against him and (b) that claim is subsumed by his procedural due process claim (*Id.* at 23-24.)

Fifth, the Utica Defendants argue that Plaintiff has failed to state a claim for retaliation under the First Amendment because he had already been placed on administrative leave at the time he brought his Article 78 proceeding and that proceeding found both that there was no merit

to his claims pursuant to the Open Meetings Law and that his claims were based on personal rather than public concerns. (*Id.* at 25-26.)

Sixth, the Utica Defendants argue that Plaintiff has failed to state a defamation claim against Defendant Nolan because all of the statements Plaintiff alleges (including ones that he does not plead in his Complaint) occurred while Defendant Nolan was acting in his capacity as Superintendent and therefore he is entitled to absolute immunity on this claim. (*Id.* at 26.)

### d.    Utica Defendants' Supplemental Briefing

Pursuant to this Court's order, the Utica Defendants filed a supplemental brief regarding new issues raised as a result of Plaintiff's Amended Complaint. (Dkt. No. 103.) In that supplemental brief, the Utica Defendants make six arguments. (*Id.*) First, the Utica Defendants argue that Plaintiff's breach-of-contract claims related to his termination must be dismissed because (a) he materially breached that agreement by misappropriating district funds, an offense for which he has now been formally convicted, and (b) his claims are barred by the faithless servant doctrine. (*Id.* at 6-10.) The Utica Defendants further argue that Plaintiff is not entitled to attorney's fees related to this claim because (a) the Article 78 proceeding has already concluded that the Utica Defendants did not breach the employment agreement, (b) the employment contract does not provide for attorney's fees in this case, and (c) Plaintiff cannot recover attorney's fees where he materially breached his own employment contract. (*Id.* at 10-14.)

Second, the Utica Defendants argue that Plaintiff has failed to articulate a protected property interest related to his due process claims because his criminal conduct means he has lost any such property interest that might have existed pursuant to New York Public Officer's Law

Section 30(1)(e), which requires the immediate termination of a public servant who is convicted of a felony or a crime in violation of their oath of office. (*Id.* at 15-17.) The Utica Defendants further argue that Plaintiff's criminal proceedings related to his conviction satisfy any requirements of due process. (*Id.* at 17-19.) They also argue that Plaintiff's three due process claims and First Amendment retaliation claim are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), because a finding of liability under any of those claims would amount to a questioning of the validity of his conviction for public corruption. (*Id*. at 19-21.)

Third, the Utica Defendants argue that Plaintiff's felony conviction renders him "libel-proof" (i.e., unable to be libeled). (*Id.* at 21-23.)

Fourth, the Utica Defendants argue that Plaintiff's termination was not related to any protected speech because he has not alleged any additional supposed speech that led to his termination. (*Id.* at 23-24.)

Fifth, the Utica Defendants argue that Plaintiff's claims against Defendant Nolan related to his termination must be dismissed because Defendant Nolan was not even employed by the School District when Plaintiff was charged with felony public corruption and subsequently terminated. (*Id.* at 24.)

Sixth, the Utica Defendants argue that there is no basis for Plaintiff's assertion of entitlement to punitive damages. (*Id.* at 24-25.)

### e.    Plaintiff's Response to Supplemental Briefing

Generally, in opposition to the Utica Defendants' supplemental arguments, Plaintiff makes five arguments. (Dkt. No. 110.) First, Plaintiff argues that the Utica Defendants'

performance of the employment contract was not excused by his criminal plea because he engaged in the conduct underlying that conviction only for a few months of the contractual period and thus there is at least a question of fact as to whether he provided substantial performance of the contract.  (*Id.* at 5-10.)

Second, Plaintiff argues that his claims are not barred by the faithless servant doctrine because such doctrine is not applicable based on the allegations in the Amended Complaint, and there is no indication that it would be applicable following discovery.  (*Id.* at 10-11.)

Third, Plaintiff argues that the terms of the contract may permit him to recover attorney's fees and at the very least require discovery regarding the parties' intent.  (*Id.* at 12.)

Fourth, Plaintiff argues that the Utica Defendants' arguments regarding his constitutional claims are without merit because the violations of his rights that he alleges all pre-date his criminal plea and Defendants' knowledge of any such conduct, and, indeed, the actions alleged in the Amended Complaint did not occur because of his guilty plea and conviction.  (*Id.* at 12-16.)

Fifth, Plaintiff argues that the Utica Defendants' argument that Plaintiff is "libel proof" has no applicability because all of the alleged unlawful defamatory statements occurred before he pled guilty.  (*Id.* at 16-17.)

## 2.    Defendant Padula's Motion for Judgment on the Pleadings

### a.    Defendant Padula's Memorandum of Law

Generally, in her motion, Defendant Padula makes ten arguments.  (Dkt. No. 35, Attach. 1.)  First, Defendant Padula argues that Plaintiff's breach-of-contract claim must be dismissed

because his employment contract violates a New York Education Law provision that limits the term of appointment for a superintendent to not more than five years. (*Id.* at 14-16.)

Second, Defendant Padula argues that, even if the contract is valid, his breach-of-contract claim should be dismissed against her because she is not in privity of contract with Plaintiff given that she was not a signatory to that contract. (*Id.* at 16-17.)

Third, Defendant Padula argues that, even if the contract is valid and she was a party to it, Plaintiff's breach-of-contract claim should still be dismissed because (a) the pleadings and relevant attached evidence document that Plaintiff was aware of the complaints against him, (b) he has not yet been formally charged given that the investigation process is still ongoing, and (c) he was placed on paid administrative leave and has not suffered any financial loss as a result of that action. (*Id.* at 17-21.)

Fourth, Defendant Padula argues that Plaintiff has failed to state a stigma-plus due process claim. (*Id.* at 21-25.) More specifically, Defendant Padula argues that Plaintiff did not experience any stigma because (a) there was nothing false in a statement that he had been placed on paid administrative leave, (b) it was Plaintiff himself, not Defendants, who informed the public that it was Plaintiff specifically who had been placed on leave, and (c) there is no stigma attached to paid administrative leave. (*Id.* at 22-24.) Defendant Padula further argues that Plaintiff has not alleged a tangible liberty interest or that he suffered an adverse employment action as a result of being placed on paid administrative leave. (*Id.* at 24-25.)

Fifth, Defendant Padula argues that Plaintiff's procedural due process claim should be dismissed because he has not plausibly alleged a property interest in continued employment with

the District given that his contract violated the five-year restriction, or, in the alternative, has not alleged a deprivation of such interest given that he has been on paid administrative leave and has not experienced any financial loss as a result of that action. (*Id.* at 25-28.)

Sixth, Defendant Padula argues that, even if Plaintiff's stigma-plus or procedural due process claims have been plausibly stated, they are nonetheless barred because he had access to adequate post-deprivation remedies in the form of an Article 78 proceeding. (*Id.* at 28-34.)

Seventh, Defendant Padula argues that Plaintiff's substantive due process claim should be dismissed because it is duplicative of his other due process-based claims, or, alternatively, because he lacks a protected liberty or property interest, he has not suffered any adverse action, and voting to place Plaintiff on paid administrative leave does not shock contemporary conscience. (*Id.* at 34-37.)

Eighth, Defendant Padula argues that Plaintiff's retaliation claim under the First Amendment must be dismissed because (a) his alleged speech and filing of the Article 78 petition are not protected speech given that they address matters of personal concern, (b) he has not suffered any adverse action as a result of being on paid administrative leave, (c) there is no causation if the alleged protected speech was the filing of the Article 78 petition given that the petition was filed after he was placed on administrative leave, and (d) there is no basis to find that Defendant Padula's reasons for voting to place Plaintiff on administrative leave were pretextual (*Id.* at 37-50.)

Ninth, Defendant Padula argues that she is entitled to qualified immunity on Plaintiff's claims pursuant to Section 1983 because there was no clearly established law preventing her

from voting to place Plaintiff on administrative leave under the circumstances presented. (*Id.* at 50-55.)

Tenth, Defendant Padula argues that Plaintiff's claim of tortious interference must be dismissed because (a) his contract is not valid, (b) her vote to place Plaintiff on administrative leave was justified, (c) there was no breach of the employment agreement, and (d) Plaintiff has not suffered any damages. (*Id.* at 55-56.)

### b.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Padula's motion, Plaintiff makes six arguments. (Dkt. No. 42.) First, Plaintiff argues that Defendant Padula cannot assert that his employment contract is unenforceable because he has not presented a breach-of-contract claim against her, but that, nonetheless, her argument that the contract is invalid because it was extended beyond five years is without merit. (*Id.* at 8-16.)

Second, Plaintiff argues that Defendant Padula was personally involved in the deprivation of Plaintiff's rights without due process because he has alleged (a) that she participated in the decision to place him on administrative leave without affording him notice and an opportunity to respond, which, as he argued in his response to the Utica Defendants' motion, deprived him of a liberty interest related to the notice provisions in his employment contract, as well as (b) that she has engaged in conduct that caused speculation and negative press coverage that has damaged Plaintiff's reputation without notice of the complaints against him. (*Id.* at 16-26.) He further argues that, as to his substantive due process claim, her behavior in suggesting at a public meeting that she had audio evidence that Plaintiff was involved in unspecified misconduct and

17

assisting in publishing complaints against Plaintiff is conscious-shocking. (*Id.* at 24-25.) He also argues that the Article 78 proceeding did not provide an adequate remedy for this deprivation of his rights because the judge in that state proceeding in fact highlighted that such issues were more properly raised before this Court. (*Id.* at 25-26.)

Third, Plaintiff argues that he has stated a valid stigma-plus claim because he has alleged that (a) Defendant Padula made public statements that produced the impression that he engaged in misconduct and that she had audio proof of such misconduct, (b) she voted to place him on administrative leave without providing notice of the substance of these complaints or an opportunity to respond, and (c) her actions have forever marred his reputation such that he would be unable to serve as Superintendent. (*Id.* at 26-32.)

Fourth, Plaintiff argues that he has stated a valid claim for First Amendment retaliation against Defendant Padula because he brought an Article 78 proceeding alleging violations of the Open Meetings Law (which is a matter of public concern and thus protected speech), after which the Superintendent (Defendant Nolan) gave a speech regarding complaints against Plaintiff and Defendants engaged in a "media blitz" about those complaints, including Defendant Padula "disclosing information to the media, or enabling the same." (*Id.* at 32-34.)

Fifth, Plaintiff argues that Defendant Padula tortiously interfered with his employment contract with the District because he has alleged that she participated in actions that led to the breach of his contract. (*Id.* at 34-35.)

Sixth, Plaintiff argues that Defendant Padula is not entitled to qualified immunity because her actions violated clearly established law and her statement about an audio recording

substantiating misconduct were not part of her normal discretionary functions and were designed to violate Plaintiff's rights.  (*Id.* at 35-36.)

<b>c.      Defendant Padula's Reply Memorandum of Law</b>

Generally, in reply, Defendant Padula makes four arguments.  (Dkt. No. 45, Attach. 3.) First, Defendant Padula argues that, as to Plaintiff's arguments regarding his breach-of-contract claim, (a) she has standing to challenge the validity of Plaintiff's employment contract despite not being a party to it because many of his other claims, including the claim of tortious interference, rely upon the validity of that contract, (b) Plaintiff's attempt to argue that the contract is valid is not persuasive because the case law on which he relies does not state that a school district can exceed the five-year limit for superintendent contracts, and (c) the decision in the Article 78 proceeding does not address the validity of the contract under the five-year restriction.  (*Id.* at 5-8.)

Second, Defendant Padula argues that Plaintiff has failed to state a stigma-plus claim because (a) he has not alleged that she stigmatized him given that her statements about an audio recording of misconduct by Plaintiff were made during an executive session – not a public meeting – and she never published that recording, which was of Plaintiff's own words, (b) Plaintiff has not alleged a liberty restraint given that he has not pointed to any future employment of which he has been deprived, and (c) the Article 78 proceedings provided Plaintiff with due process.  (*Id.* at 9-12.)

Third, Defendant Padula argues that Plaintiff has failed to state a First Amendment retaliation claim because (a) his Article 78 proceeding was not protected speech on the basis of newsworthiness and his argument to that effect contradicts his allegations that it was improper

for complaints of misconduct to be brought to the public's attention, (b) Plaintiff's Article 78 proceeding was not a matter of public concern merely because it alleged a violation of the Open Meetings Law, and (c) Plaintiff cannot escape the fact that he was placed on administrative leave before he filed the Article 78 proceeding, and he has not plausibly alleged any actions by Defendant Padula after the filing of that proceeding that could constitute an adverse action. (*Id.* at 12-13.)

Fourth, Defendant Padula argues that Plaintiff has failed to respond to a number of arguments in her motion and those arguments should therefore be deemed to have been admitted by Plaintiff. (*Id.* at 13.)

### d.    Defendant Padula's Supplemental Briefing

Defendant Padula also submitted supplemental briefing in response to Plaintiff's Amended Complaint, in which she makes three arguments. (Dkt. No. 104.) First, Defendant Padula argues that, as to Plaintiff's substantive due process claim, it was not conscious-shocking behavior to terminate Plaintiff's employment after he was indicted and convicted of stealing school funds, and, at the very least, Defendant Padula would be entitled to qualified immunity because there is no clearly established law indicating that it would be unlawful to vote for the termination of an indicted superintendent under the circumstances. (*Id.* at 3-4.)

Second, Defendant Padula argues that she did not deny Plaintiff due process or his First Amendment rights or induce a breach of his contract by voting to terminate his employment because such actions were warranted as a result of his indictment and later conviction given that the circumstances rendered him unable to fulfill the duties required of a superintendent under New York law. (*Id.* at 4-6.) She further argues that, as to his First Amendment claim, he has not

20

alleged that the criminal indictment was a mere pretext for terminating him based on any protected speech.  (*Id.* at 6-7.)

Third, Defendant Padula argues that Plaintiff's stigma-plus and First Amendment retaliation claims must be dismissed because he has not alleged causation between the stigmatizing statements and his termination given that the stigmatizing statements occurred approximately a year before he was ultimately terminated.  (*Id.* at 7-10.)

### 3.    Defendant Hobika's Motion to Dismiss

#### a.    Defendant Hobika's Memorandum of Law

Generally, in his motion to dismiss, Defendant Hobika makes three arguments.  (Dkt. No. 107, Attach. 2.)  First, Defendant Hobika joins in the arguments made by the Utica Defendants in support of their motion to dismiss.  (*Id.* at 2.)

Second, Defendant Hobika argues that he is not individually liable for the acts of the Board of Education because (a) Plaintiff's employment agreement was with the Board of Education, not with him as an individual, (b) no individual Board member has the authority to take any action alone on behalf of the Board, and (c) Plaintiff does not allege any action taken by Defendant Hobika individually as opposed to as a member of the Board.  (*Id.* at 2-4.)

Third, Defendant Hobika argues that the doctrine of collateral estoppel bars Plaintiff's claims regarding being placed on administrative leave because the New York Supreme Court has already found in a state action that Plaintiff's employment contract had not been violated by placing him on paid administrative leave pending an investigation into reports of misconduct. (*Id.* at 5-7.)

#### b.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Hobika's motion, Plaintiff makes two arguments. (Dkt. No. 111.)  First, Plaintiff argues that he has sufficiently pled personal involvement by Defendant Hobika in actions beyond merely voting to place Plaintiff on administrative leave or to terminate his employment.  (*Id.* at 4-7.)  Similarly, he argues that an individual Board member may be liable for violations of a contract where he or she has engaged in wrongdoing separate from the actions of the Board itself, and that Plaintiff has alleged such separate wrongdoings. (*Id.* at 7-9.)

Second, Plaintiff argues that Defendant Hobika's argument that his breach-of-contract claims related to his being placed on paid administrative leave are barred by the doctrine of collateral estoppel is frivolous because the Oneida County Supreme Court judge "declined to exercise discretion to issue a declaration as to Plaintiff's contractual rights" and found that Plaintiff's Article 78 petition did not contain a contract claim, as well as because a subsequent decision in an action brought by the Defendants in state court suggests both that collateral estoppel does not apply and that Defendants' claims that the employment contract is invalid are meritless.  (*Id.* at 9-12.)

### c.    Defendant Hobika's Reply Memorandum of Law

Generally, in reply, Defendant Hobika makes three arguments.  (Dkt. No. 114.)  First, Defendant Hobika argues that Plaintiff's breach-of-contract claim should be barred by collateral estoppel based on the decision in the Article 78 state proceedings as to his allegations that placement on administrative leave constituted a breach of the terms of his employment contract. (*Id.* at 1-3.)

22

Second, Defendant Hobika argues that the decision in a state action filed by the Utica Defendants seeking declaratory judgment on the validity of Plaintiff's employment contract does not serve as precedent against any arguments made by Defendants here because that action was dismissed for mootness after Plaintiff's employment was terminated, and the judge in that case did not reach the merits of the issue asserted. (*Id.* at 3-4.)

Third, Defendant Hobika argues that Plaintiff's criminal conviction and criminal behavior bars recovery on his claims because (a) his conviction on March 7, 2024, extinguished any property interest he may have had related to his employment, and (b) rendering a favorable decision on any claims pursuant to Section 1983 based in a theory of wrongful termination would require the invalidation of Plaintiff's conviction, a result which violates *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.* at 4-7.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

24

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by

**B.      Motion for Judgment on the Pleadings**

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

**III.      ANALYSIS**

**A.      Whether Plaintiff Has Stated a Claim Pursuant to Federal Law**

**1.      Whether Plaintiff's Due Process Claims Against the Moving Defendants Must Be Dismissed**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.B.1.a, c, d, I.B.2.a, c, d, and

---

the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

I.B.3.a and c of this Decision and Order.  To those reasons, the Court adds the following analysis.

### a.    Substantive Due Process

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted).  "To state a claim for a violation of substantive due process, a plaintiff must allege (1) a valid liberty or property interest and (2) that defendants infringed on that interest in an arbitrary or irrational manner."  *20 Dogwood LLC v. Vill. of Roslyn Harbor*, 2024 WL 1597642, at *1 (2d Cir. Apr. 12, 2024) (citing *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York*, 746 F.3d 538, 545 [2d Cir. 2014]).  To survive a motion to dismiss on such a claim, a plaintiff must allege facts plausibly suggesting conduct that "was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Village of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 [1998]).

Without needing to reach the question of whether Plaintiff has asserted a valid liberty interest, the Court finds that Plaintiff's substantive due process claim fails as a matter of law because he has not alleged any facts plausibly suggesting that the conduct to which he was allegedly subjected was egregious, outrageous, or conscience-shocking.  Plaintiff's Amended Complaint acknowledges that he was the subject of accusations of misconduct or inappropriate

activity,[5] and that his accused misconduct was the stated basis for Defendants placing him on administrative leave. (Dkt. No. 86, at ¶¶ 3-6, 22-24.) Plaintiff specifically alleges that certain statements by Defendant Nolan in December 2022 related to other issues with Plaintiff's performance -- including Plaintiff's interactions with the Community Foundation regarding certain funds, communications with Mohawk Valley Community College, the filling of vacant positions, the purchase of a weapons detection system for school buildings, and the enforcement of workplace rules regarding disciplinary policies -- were all false; but he conspicuously does not assert that the *complaints* of misconduct from before December 2022, including those that led to his placement on administrative leave, were false. (*Id.* at ¶¶ 67-75.) Plaintiff also acknowledges that his employment was eventually terminated after the filing of a criminal indictment against him. (*Id.* at ¶ 79.) Whether or not the actions Defendants took may have violated his other rights (or whether Defendants might have had improper motives), Plaintiff's own factual allegations (and the other facts of which the Court may take judicial notice) plausibly suggest that he was placed on administrative leave after allegations of misconduct, and that his employment was later terminated after he became the subject of a criminal indictment. Such actions do not therefore rise to the level required to state a substantive due process claim.

In the alternative, the Court finds that Plaintiff's substantive due process claim must be dismissed because it is subsumed by his procedural due process claim. Specifically, the actions

---

[5]    The Court notes that the decision on the Article 78 proceeding (which, as will be discussed in more detailed related to Plaintiff's First Amendment claim, is properly incorporated by reference in, and integral to, the Amended Complaint, and is therefore an appropriate subject of consideration when deciding the motions to dismiss) indicates that those complaints related to alleged racist, sexist, and homophobic statements made by Plaintiff that were purported to create a hostile work environment. (Dkt. No. 41, Attach. 1, at 3.)

that Plaintiff alleges Defendants took against him that violated his substantive due process rights are identical to those he alleged violated his procedural due process rights.  (*Compare* Dkt. No. 86, at ¶ 114 *with* Dkt. No. 86, at ¶ 119.)  He further alleges identical harm from those actions for both causes of action.  (*Compare* Dkt. No. 86, at ¶ 115 *with* Dkt. No. 86, at ¶ 120.)  Because both of Plaintiff's due process claims essentially assert that his rights were violated by Defendants taking certain actions against him without first providing an opportunity to respond or "clear his name," Plaintiff cannot assert a claim under the more generalized notion of substantive due process.  *See Novak v. Bd. of Educ. of Fayetteville-Manlius Cent. Sch. Dist.*, 05-CV-0199, 2007 WL 804679, at *8 (N.D.N.Y. Mar. 14, 2007) (Scullin, J.) (finding substantive due process claim subsumed into claims for procedural due process and First Amendment retaliation where the same facts underlying those claims formed the basis for his allegations that the defendants' conduct was conscious-shocking); *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (noting that "[w]here what is allegedly shocking about what the defendants did is either their intent to violate plaintiff's fundamental First Amendment rights, or their motive to deprive her of liberty without procedural due process," such that proof of the unconscionable or shocking facts would show specific constitutional violations, redress under the substantive due process clause is unavailable).

For the above reasons, Plaintiff's substantive due process claim against the moving Defendants must be dismissed.

### b.    Procedural Due Process

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process."

30

*J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (citing *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 [2d Cir. 2012]).  "In order to do this, a plaintiff must 'first identify a property rights, second show that the government has deprived him of *that* right, and third show that the deprivation was effected without due process.'"  *T'Kach*, 714 F.3d at 105 (quoting *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 [2d Cir. 1994]) (emphasis in original).

Here, the Court finds first that the terms of Plaintiff's public employment contract create a property interest that is protected by the Due Process Clause.  *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972) (finding that a property interest exists where the subject has "more than a unilateral expectation" of a certain benefit, but rather a "legitimate claim of entitlement to it"); *Walentas v. Lipper*, 862 F.2d 414, 418 (2d Cir. 1988) (noting that the Supreme Court has recognized that a contract with an expectation of continued employment can constitute a property interest, but is limited to "situations which involve contracts with tenure provisions and the like, or where a clearly implied promise of continued employment has been made") (citing *Perry v. Sindermann*, 408 U.S. 593, 601-02 [1972]).  In particular, Plaintiff's employment agreement and addendums thereto include a specific term of employment, which, as of the most-recent addendum, indicated that his term of employment had been extended until January 31, 2027.  (Dkt. No. 86, Attach. 2, at 19.)  It further contains specific language regarding when the contract can be terminated (resulting in discharge from employment), which consists of only two scenarios: (1) if he is unable to perform his duties and responsibilities for a period of six months as a result of sickness or disability after his sick leave has been exhausted; and (2) as a result of misconduct, insubordination, incompetency, neglect of duty, or removal from office in

31

accordance with the N.Y. Education Law, following a specified hearing process. (*Id.* at 14-15.) Because Plaintiff's employment was guaranteed for the specified term barring the occurrence of one of the two scenarios in which it could be properly terminated, he possessed a property interest in his employment.

The Utica Defendants argue that, regardless of whether Plaintiff has articulated a property interest in his Amended Complaint, his criminal conviction has erased that interest pursuant to N.Y. Pub. Off. L. § 30(1)(e). (Dkt. No. 103, at 15-17.) This statute states, in relevant part, that an office shall be considered to be vacant upon, among other occurrences, "[h]is or her conviction of a felony, conviction of a crime involving a violation of his or her oath of office, or upon entering a guilty plea in federal court to a felony, or upon entering a guilty plea in federal court to a crime involving a violation of his or her oath of office." N.Y. Pub. Off. L. § 30(1)(e). Defendants appear to argue that Plaintiff's guilty plea and conviction act as a bar to any due process claim arising from his termination; but the facts of this case do not allow for any such simple resolution. Importantly, the Amended Complaint alleges that Plaintiff's employment was terminated on November 27, 2023. (Dkt. No. 86, at ¶¶ 80; Dkt. No. 86, Attach. 1, at 2.) Although it does not appear to be mentioned in the Amended Complaint, the Court takes judicial notice of the fact that Plaintiff pleaded guilty to a felony charge of public corruption on March 7, 2024. (Dkt. No. 75, Attach. 4.) Plaintiff was therefore terminated multiple months *before* his guilty plea and conviction, and, as a result, N.Y. Pub. Off. L. § 30(1)(e) would not render his position vacant until after he was already terminated.

The Utica Defendants appear to assume that N.Y. Pub. Off. L. § 30 and Plaintiff's conviction extinguish any property right he had in his employment *retroactively*; but that point of

law is not supported by any of the authority they cite.  In fact, one of those cases, *Braun v. City of New York*, appears to reflect the opposite point of law: that the loss of a property right applies to the time period *on and after* the date of the guilty plea/conviction, not *before*.  *See Braun v. City of New York*, 284 F. Supp. 3d 572, 577 (S.D.N.Y. 2018) ("Because the plaintiff had no property interest in his employment, and therefore no property interest in Disability Retirement, as of November 22, 2010 [the date the plaintiff entered his guilty plea], he could not have been deprived of them without due process *after that date*.") (emphasis added).   Indeed, the court in *Braun* specifically acknowledges that "[t]he deprivation of the plaintiff's employment came only after he received the process afforded by his criminal proceedings."  *Braun*, 284 F. Supp. 3d at 578.  The other cases the Utica Defendants cite also involve situations where the termination occurred *after* the individual was convicted or pleaded guilty.  *See Greene v. McGuire*, 683 F.2d 32, 33 (2d Cir. 1982) ("On October 3, 1973, all of the accused officers were convicted by a jury in Kings County.  Greene, Callis and the others were dismissed from the police force on October 9, 1973, pursuant to Public Officers Law § 30[1][e].");  *Brown v. City of Syracuse*, 648 F. Supp. 2d 461, 465 (N.D.N.Y. 2009) (Hurd, J.) (noting that the plaintiff was only suspended without pay and ultimately terminated after he pleaded guilty to a crime that vacated his employment);  *Bolden v. City of New York*, 256 F. Supp. 2d 193, 194-95 (S.D.N.Y. 2003) (involving automatic termination of employment "following their 1999 convictions on federal charges");  *Matter of Toro v. Malcom*, 44 N.Y.2d 146, 149 (N.Y. 1978) (noting that, after the plaintiff was convicted by a jury on criminal charges, his office was vacated as of the date of his conviction).  Simply stated, the Utica Defendants have not pointed to any authority that would support their argument

that Plaintiff's guilty plea on March 7, 2024, retroactively destroyed the property interest Plaintiff held on November 27, 2023.[6]

As to whether Plaintiff has plausibly alleged that Defendants' actions deprived him of his property interest in his employment, Plaintiff relies on two separate actions: (1) his placement on paid administrative leave; and (2) the termination of his employment.

Regarding the placement of Plaintiff on paid administrative leave, "[i]t is well-settled that '[a]n employee who is on leave and receiving [his] normal salary is not deprived of a property right merely b[y] virtue of being relieved of [his] job duties.'" *Alaei v. State Univ. of New York at Albany*, 21-CV-0377, 2024 WL 2941735, at \*13 (N.D.N.Y. June 11, 2024) (Sannes, C.J.) (quoting *Knights v. City Univ. of New York*, 639 F. Supp. 3d 395, 400 [E.D.N.Y. 2022]); *accord MacFall v. City of Rochester*, 495 F. App'x 158, 160 (2d Cir. 2012) (quoting *O'Connor v. Pierson*, 426 F.3d 187, 199 [2d Cir. 2005]).  Here, Plaintiff does not allege facts plausibly suggesting that he was paid less than his normal salary or that he suffered any loss of tangible benefits while he was on paid administrative leave.  As a result, the alleged action of placing Plaintiff on paid administrative leave does not constitute a deprivation of his property interest in his employment.

By contrast, termination of employment where that employment is guaranteed by a contract has been found to constitute a deprivation of a property interest.  *See Kampfer v. Argotsinger*, 18-CV-0007, 2020 WL 906274, at \*6 (N.D.N.Y. Feb. 25, 2020) (Kahn, J.) ("'In the [public] employment context, a property interest arises only where the state is barred, whether by

---

[6]    In other words, although Plaintiff's guilty plea clearly destroyed his property interest on March 7, 2024, pursuant to the relevant law, that fact does not mean he had no protectable right before that date.

statute or contract from terminating (or not renewing) the employment relationship without cause.'") (quoting *S&D Maint. Co. v. Goldin*, 844 F.2d 962, 967 [2d Cir. 1988]).  Here, Plaintiff clearly alleges that his employment was terminated before the expiration of his employment contract, and that Defendants failed to follow the procedures outlined in the employment contract when doing so.  As a result, he has adequately alleged that he was deprived of the relevant property interest.

The final question is therefore whether that deprivation occurred without due process.  The requisite elements of due process are notice and an opportunity to be heard.  Specifically, "[w]hen a public employee is terminated, the Due Process requirement is satisfied if the government provides notice and a very limited opportunity to be heard, so long as a more comprehensive hearing is provided afterward."  *Rosa v. City Univ. of New York*, 04-CV-9139, 2007 WL 1001416, at *3 (S.D.N.Y. Apr. 2, 2007) (citing *Gilbert v. Homar*, 520 U.S. 924, 929 [1997]; *Cleveland Bd. of Edu. v. Loudermill*, 470 U.S. 532, 542 [1985]; *Locurto v. Safir*, 264 F.3d 154, 173-74 [2d Cir. 2001]).  As a result, notably, Defendants were not required to follow the specific procedures outlined in Plaintiff's employment contract in order for the Court to find that he was afforded due process.

Based on the factual allegations of Plaintiff's Amended Complaint, Plaintiff has not plausibly alleged that Defendants failed to provide him with notice before they terminated his employment.  Due process specifically requires "notice [that is] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action."  *First Nat. Acceptance Co. v. City of Utica, N.Y.*, 26 F. Supp. 3d 185, 195 (N.D.N.Y. 2014) (McAvoy, J.).  Notice muse also "'set forth the alleged misconduct with particularity.'"  *Spinelli v. City of New*

*York*, 579 F.3d 160, 171 (2d Cir. 2009) (quoting *In re Gault*, 387 U.S. 1, 33 [1967]).  Plaintiff acknowledges in the Amended Complaint that he was summoned by letter to a special session of the Board of Education, and the referenced exhibit supplements that allegation by indicating that (a) the letter informing Plaintiff of that meeting was dated November 21, 2023 (although Plaintiff alleges he received it only "two days" before the meeting),[7] and (b) in that letter, Defendant Hobika had "directed [Plaintiff] to come to this meeting so that the Board members could have a discussion with [him] regarding concerns relating to [his] employment with the District."  (Dkt. No. 86, at ¶ 78; Dkt. No. 86, Attach. 1, at 2.)  Plaintiff further alleges that, at this meeting, he was "asked by Defendants about a recent criminal indictment" and was handed the letter appended to the Amended Complaint.  (Dkt. No. 86, at ¶¶ 79-80.)  Plaintiff alleges that the letter he was handed "specifically terminates him from his employment," but the actual wording of the letter states that the enumerated concerns therein "have caused the Board to consider moving to terminate your employment, effective today," and that Plaintiff was "welcome to now address the Board regarding these concerns."  (Dkt. No. 86, at ¶ 80; Dkt. No. 86, Attach. 1, at 2.)  Another letter attached to the Amended Complaint, dated November 30, 2023, states that "[t]he Board of Education, at its special meeting on November 27, 2023, approved your termination of employment as Superintendent of the Utica City School District, effective immediately."  (Dkt. No. 86, Attach. 7, at 2.)  These letters (which, again are part of the

---

[7]     It is not clear whether this is correct, as the same allegation states that the Board meeting took place on November 24, 2023, which is not only contrary to the evidence appended to the Amended Complaint, but also with Plaintiff's subsequent allegations that state the meeting took place on November 27, 2023.

Amended Complaint because they are attachments thereto) therefore contradict Plaintiff's allegation that the letter of November 27, 2022, itself terminated his employment.

However, even resolving any ambiguities in the Amended Complaint regarding this matter in favor of Plaintiff, the allegations still do not plausibly suggest that Plaintiff was not afforded pre-deprivation notice.  Plaintiff himself alleges that he was summoned to the Board meeting just days after he was indicted and arraigned on criminal charges, and that at the meeting the Board asked him questions specifically about that indictment and handed him a letter that explained to him the reasons Defendants were intending to terminate his employment effective that day, which included the fact of the recent indictment.  These circumstances were sufficient to provide Plaintiff notice of the basis for his termination.  *See Spinelli*, 579 F.3d at 172 (finding notice to be inadequate where the "notices" to the plaintiff did not provide any specificity regarding the actual infractions that were the basis of the action).

Further, the allegations in the Amended Complaint themselves show that Plaintiff received at least a limited opportunity to be heard.  Specifically, although Plaintiff alleges he was "not permitted the benefit of counsel or to give any reply to any complaints or charges" at the Board meeting on November 27, 2023, he acknowledges that he "was asked by Defendants about a recent criminal indictment levied against him, that was unrelated to any previous facts or complaint brought up or investigated by the District."  (Dkt. No. 86, at ¶ 79.)  As a result, Plaintiff has alleged that although he was not permitted to respond the various complaints and charges that had been used to justify his placement on paid administrative leave or raised thereafter, he was "asked" about the recent criminal indictment, and he does not allege that he was denied an opportunity to answer those questions that were asked.  Moreover, the letter that

was allegedly handed to him at the meeting on November 27, 2023, specifically states that, following the reading of that letter, Plaintiff was "welcome to now address the Board regarding these concerns," which specifically included the criminal charges that had been filed against him. (Dkt. No. 86, Attach. 1, at 2.)  Given that the indictment appears to be what prompted the decision to terminate Plaintiff at that specific time, Plaintiff was at least provided a limited opportunity to be heard about that indictment at the meeting where he was informed of the intent to terminate his employment.

Alternatively, the Supreme Court has acknowledged that criminal charges supported by an indictment can themselves be sufficient to substitute for a limited pre-deprivation hearing because an indictment assures that "there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Gilbert v. Homer*, 520 U.S. 924, 933-34 (1997) (acknowledging that "an 'ex parte finding of probable cause' such as a grand jury indictment provides adequate assurance that the [adverse action] is not unjustified"); *see also Nnebe v. Daus*, 644 F.3d 147, 159 (2d Cir. 2011) (stating that, "we think in any given case, an arrest for a felony or serious misdemeanor creates a strong government interest in ensuring that the public is protected in the short term, prior to any hearing," and finding that such strong interest outweighed any risk of erroneous deprivation); *Rosa v. City Univ. of New York*, 04-CV-9139, 2007 WL 1001416, at *3 (S.D.N.Y. Apr. 2, 2007) (noting that the defendant university's "interests in protecting its students and maintaining public confidence in the school justify its need to act quickly when staff members are charged with felonies").[8]  As a result, the fact of the

---

[8]      Plaintiff argues that he was entitled specifically to pre-deprivation process under *DiBlasio v. Novello*, which states that the "random and unauthorized" exception to the requirement to provide pre-deprivation process "does not apply where the government actor in

indictment on the relevant charges mitigates any potential risk of erroneous deprivation here because, as discussed above, it provides a reasonable basis upon which Defendants could believe Plaintiff had likely engaged in the crimes charged.[9]

Because Plaintiff was therefore provided notice and at least a limited opportunity to be heard related to the indictment, and because the indictment itself provides some assurance that the action taken against Plaintiff was supported, the remaining question is whether he was provided sufficient *post*-deprivation process, most specifically in the form of the criminal proceedings that resulted in his guilty plea. As an initial matter, the Court finds that it may consider certain documents filed as part of Defendant Padula's motion for summary judgment when considering the motions to dismiss and motion for judgment on the pleadings (such as the Indictment, Certificate of Disposition, and transcripts of the proceedings from Plaintiff's change of plea and sentencing hearings) for each of two alternative reasons: (1) they are sufficiently integral to (if not referenced in) the Amended Complaint (and it is clear from the record that no

_____

question is a high-ranking official with 'final authority over significant matters.'" 344 F.3d 292, 302-03 (2d Cir. 2003). Apart from confusing the high-level nature of the *government actor* (what *DiBlasio* actually addresses) with his own purported status as a high-level *employee*, Plaintiff has offered no allegations to plausibly suggest that any Defendants would be considered to be high-level government actors. Notably, the relevant defendant in *DiBlasio* was the Commissioner of the New York State Department of Health, whereas here Defendants constitute a school district, its board of education, and members of that board of education. The Court takes judicial notice of the fact that, in New York, individual school districts and their boards of education are subject to laws and regulations promulgated by the New York State Education Department and the New York State Legislature, and therefore do not have the ultimate final authority on many significant matters.

[9]    Plaintiff has not, and cannot, assert that the Indictment lacked probable cause or was insufficient to provide a reasonable basis for Defendants to believe he committed the charged acts because he ultimately pleaded guilty to one of those charges in satisfaction of all of them, and thus admitted the truth of at least part of the basis for the Indictment.

dispute exists regarding the authenticity or accuracy of the documents); and (2) in any event, such court documents are proper subjects of judicial notice. *See Reif v. Art Institute of Chicago*, 703 F. Supp. 3d 427, 433 (S.D.N.Y. 2023) ("[C]ourts may take judicial notice of court documents and other public records.") (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 [2d Cir. 1991]).

This evidence shows that the Indictment was filed on November 20, 2023, and that Plaintiff was arrested and arraigned on November 21, 2023. (Dkt. No. 75, Attach. 2.) In the letter dated November 27, 2023, attached to the Amended Complaint, Defendant Hobika, as Board President, indicates that (a) he sent a letter to Plaintiff on November 21, 2023, directing Plaintiff to meet with the Board members to discuss concerns related to Plaintiff's employment with the District, (b) he acknowledged that Plaintiff had been "recently charged with multiple felonies relating to your employment as Superintendent of the District," and (c) the Board was considering terminating Plaintiff's employment, effective as of that date, based on the previous investigation and report about his conduct towards other employees, statements by Plaintiff's attorney that Plaintiff would be unable to effectively return as Superintendent, the felony charges, and the need to move forward. (Dkt. No. 86, Attach. 1, at 2.)

As was discussed above, it is clear from Plaintiff's own Amended Complaint and relevant attachments that the indictment against Plaintiff was a basis for terminating his employment at the time they did, and, also as already discussed, a conviction on such charges would necessarily require the termination of Plaintiff's employment under New York law. Given the fact that such charges would unequivocally require Plaintiff's dismissal under New York law upon conviction, the relevant question that would need to be debated at any post-deprivation hearing would

40

necessarily involve an assessment of whether those charges were true or at least reasonably supported to justify terminating Plaintiff. Under these circumstances, the state criminal proceedings were a more appropriate post-deprivation process than anything Defendants themselves could have provided because those proceedings were intended to assess whether the charges in the Indictment were true while affording Plaintiff the full procedures and protections inherent in the criminal process (thus minimizing the risk that any deprivation was erroneous), and Plaintiff had a full and fair opportunity to defend himself and be heard on those charges within the context of those proceedings. Indeed, the plea colloquy (which, as discussed above, is a judicial proceeding of which the Court can take judicial notice) substantiates the fact that Plaintiff pleaded guilty to a felony charge of public corruption of his own free will, acknowledged that he understood the rights he was giving up by doing so, and affirmed the nature and details of the conduct underlying that charge. (Dkt. No. 75, Attach. 4.) Thus, in this case, the criminal proceedings provided Plaintiff with a sufficient post-deprivation opportunity to be heard regarding the charges against him that formed a reason for his dismissal from his employment.

For all of these reasons, the Court finds that Plaintiff cannot state a procedural due process claim against the moving Defendants as a matter of law, and thus that claim must be dismissed.

### c.    Stigma-Plus

To state a claim for a stigma-plus due process violation, "the plaintiff must plausibly plead the existence of a stigmatizing statement that is 'coupled with the loss of governmental employment or deprivation of a legal right or status, such as loss of job opportunities.'" *Walker*

41

*v. Fitzpatrick*, 814 F. App'x 620, 624 (2d Cir. 2020) (quoting *Abramson v. Pataki*, 278 F.3d 109,

113 [2d Cir. 2019]).  A stigmatizing statement is "one that 'call[s] into question plaintiff's good

name, reputation, honor, or integrity.  Statements that denigrate the employee's competence as a

professional and impugn the employee's professional reputation in such a fashion as to

effectively put a significant roadblock in that employee's continued ability to practice his or her

profession may also fulfill this requirement.'"  *Walker*, 814 F. App'x at 624 (quoting *Patterson

v. City of Utica*, 370 F.3d 322, 330 [2d Cir. 2004]).[10]

    Plaintiff's stigma-plus claim arising from his placement on paid administrative leave

must be dismissed for the same reasons as his procedural due process claim must be dismissed:

namely, he was still receiving his salary and therefore did not experience a sufficient deprivation

of his protected rights.  *See MacFall*, 495 F. App'x at 160 (finding plaintiff had failed to allege

deprivation of a right to sustain a stigma-plus claim based on being placed on paid leave that

---

[10]    Plaintiff appears to argue throughout his various memoranda that the reputation damage
caused by Defendants' actions and statements prevented him from continuing to engage in his
chosen profession, and that such ability to engage in his chosen profession itself constitutes a
liberty interest.  However, the Second Circuit has made clear that "[a] person's interest in his or
her good reputation alone, apart from a more tangible interest, is not a liberty or property interest
sufficient to invoke the procedural protections of the Due Process Clause," with tangible interests
including loss of government employment.  *See Patterson*, 370 F.3d at 329-30 ("Loss of one's
reputation can, however, invoke the protections of the Due Process Clause *if that loss is coupled
with the deprivation of a more tangible interest,* such as government employment.") (emphasis
added); *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996) ("A
free-standing defamatory statement made by a state official about an employee is not a
constitutional deprivation. . . . But a defamatory statement about an employee implicates a liberty
interest when it is made during the course of that employee's termination from employment.").
As a result, it was the combination of the alleged statements and Plaintiff's termination that
would constitute the relevant liberty interest in this case, not merely the fact that stigmatizing
statements were made that might have affected Plaintiff's professional reputation.  Plaintiff's
generic allegations that he lost job opportunities or was unable to continue in his chosen
profession as a result of the statements are simply too vague and speculative to establish a liberty
interest.

provided the normal salary); *cf. Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 31-32 (2d Cir. 1994) (noting that the "plus" in a stigma-plus claim "is not only significant damage to a person's employment opportunities but dismissal from a governmental job or deprivation of some other legal right or status").

Termination of employment, on the other hand, can constitute the "plus" to sustain such a claim. However, there must be a temporal link between the defamatory statements and the termination of employment in order to state a claim. *See Martz*, 22 F.3d at 32; *see Guerra v. Jones*, 421 F. App'x 15, 19 (2d Cir. 2011) (noting that, as part of stating a stigma-plus claim, the plaintiff must show that "the stigmatizing statements were made contemporaneously with the plaintiff's dismissal from government employment") (citing *Patterson*, 370 F.3d at 330). Here, Plaintiff has not alleged facts plausibly suggesting such a connection related to his termination.

Rather, the stigmatizing statements or actions alleged in the Amended Complaint occurred (a) at the School Board Special Meeting on October 18, 2022, (b) in an interview by Defendant Nolan in November 2022, (c) through public statements made by Defendant Nolan on December 13, 2022, at a Board of Education meeting, and (d) through various media coverage.[11] (Dkt. No. 86, at ¶¶ 51, 64-73.) The most recent of these allegedly stigmatizing statements therefore occurred in mid-December of 2022; yet Plaintiff's employment was not terminated until November of 2023, nearly a full year later. Further, although the allegations of misconduct

---

[11] The Court notes that the various news articles included by Plaintiff in the Amended Complaint, while discussing Plaintiff's administrative leave and a recording of Plaintiff making derogatory and explicit statements about a school employee, do not actually contain statements by any of Defendants, only reports that Defendants voted to place Plaintiff on administrative leave and details regarding information taken from court cases filed about the suspension. As a result, Plaintiff's assertion that these articles constitute examples of Defendants engaging with the media, much less with the purpose of ruining his reputation, is wholly speculative.

that Defendants made against Plaintiff (through their alleged statements) provided part of the rationale for Plaintiff's termination (according to the November 27, 2023, letter attached to the Amended Complaint), there were also other reasons, most particularly the recent criminal indictment, that Plaintiff was dismissed at the relevant time.

For all of these reasons, the Court finds that Plaintiff has not plausibly alleged a stigma-plus claim against the moving Defendants arising from his termination.

### 2.    Whether Plaintiff's First Amendment Retaliation Claims Against the Moving Defendants Must Be Dismissed

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.B.1.a, c, d, I.B.2.a, c, d, and I.B.3.a and c of this Decision and Order.  To those reasons, the Court adds the following analysis.

"A public employee 'pursuing a claim for First Amendment retaliation must demonstrate that (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination.'" *Gandhi v. New York State Unified Court System*, 20-CV-0120, 2024 WL 365119, at *5 (N.D.N.Y. Jan. 31, 2024) (Kahn, J.) (quoting *Cobb v. Pozzi*, 363 F.3d 89, 102 [2d Cir. 2004]). "With regards to the first element, the speech 'must have been made as a citizen on matters of public concern rather than as an employee on matters of personal interest'–meaning that a plaintiff's statements cannot have been 'uttered for any other reason than to protect [a plaintiff's] own rights or to air his personal grievances.'"  *Gandhi*, 2024 WL 365119, at *5 (quoting *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 235-36 [2d Cir. 2002]); *see also Ruotolo v. City of*

*New York*, 514 F.3d 184, 189 (2d Cir. 2008) (noting that, when assessing whether speech was a matter of public concern, courts consider "whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose").

Here, Plaintiff's First Amendment retaliation claims fail to get over the first hurdle. He alleges that Defendants retaliated against him for "his assertion of his rights under the United States and New York constitutions as described herein beginning on or about October 12, 2022 and thereafter, as well as his filing of an Article 78 Petition and publicizing the individual Defendant's violations of NY POL § 100-111." (Dkt. No. 86, at ¶ 123.) The allegations regarding these alleged assertions of his constitutional rights indicate that Plaintiff's actions consisted of the following: (1) sending a letter by and through his legal counsel on October 12, 2022, asserting "his rights under his own contract, the United States Constitution, and the New York Constitution" following an executive session on October 6, 2022, in which certain allegations of misconduct were raised against him; and (2) filing an Article 78 petition in December of 2022 seeking relief for asserted violations of New York's Public Officer's Law related to the meetings whereby Plaintiff was placed on administrative leave as well as "an equitable declaration regarding his contractual rights." (Dkt. No. 86, at ¶¶ 41-44, 82-83.)

These factual allegations do not plausibly suggest that Plaintiff made the relevant statements regarding his rights as a citizen related to a matter of public concern. His letter to Defendants informing them that they were violating his constitutional and contractual rights by attempting to take action against his employment status without complying with certain procedures is almost indisputably a matter of personal concern. Moreover, while the general public may have an interest in ensuring that laws such as the Open Meetings Law are followed in

45

the abstract, Plaintiff's objections that form the basis of his purported protected speech in that respect cannot be construed as anything other than an attempt to protect or vindicate his own personal rights, i.e., to preserve his employment.

Indeed, in his decision on Plaintiff's Article 78 petition, New York State Supreme Court Justice Scott J. DelConte found that Plaintiff's claims related to violations of the Open Meetings Law asserted therein were of a personal nature.[12] (Dkt. No. 41, Attach. 1.)[13] Although Plaintiff alleges in the Amended Complaint that his petition was "seeking equitable relief on behalf of the public" as to the Open Meetings Law and that Judge DelConte "misinterpreted" his claims as personal in nature, Plaintiff's attempt to reframe the legal issues and findings related to that petition need not be accepted as true by this Court, particularly given that the facts before the Court clearly demonstrate that Plaintiff is simply not correct. The outcome Plaintiff sought in filing his Article 78 petition was to have the resolution that placed him on administrative leave annulled, in part because of the alleged violations of the Open Meetings Law but also because it allegedly violated his employment contract. (Dkt. No. 41, Attach. 1, at 2.) The personal nature

---

[12]    Specifically, Judge DelConte found that "Karam's special proceeding has, in reality, very little to do with the application of the Open Meetings Law – a statute designed to ensure transparency and prevent officials from shielding themselves from public scrutiny – and everything to do with the fact that he wants this Court to review, and respond to, his allegations of conspiracy and private animus by the Board members who voted to place him on administrative leave. . . . Karam's grievance against those individuals is of a personal nature, however, and there is no redress for personal grievances under the Open Meetings Law." (Dkt. No. 41, Attach. 1, at 10-11.)

[13]    Although this Decision was not attached to the Amended Complaint, the Court may properly consider it here on the parties' motions to dismiss and motion for judgment on the pleadings because it is referenced in, and/or integral to, Plaintiff's Amended Complaint given that Plaintiff specifically discusses and references Judge DelConte's decision in the Amended Complaint.

of Plaintiff's grievance is further highlighted by Judge DelConte's recognition that the alleged violations of the Open Meetings Law involving holding executive sessions and providing only general details in public regarding the subject of the executive sessions were entirely proper because sensitive personnel matters are not intended to be public even under the Open Meetings Law.  The basis of Plaintiff's Article 78 petition involved discussions related to the decision to place him on administrative leave, matters which should not be public and are wholly related to Plaintiff's own personal interest in his continued employment as Superintendent.  As a result, Plaintiff has not provided factual allegations plausibly suggesting that his Article 78 petition did anything but attempt to vindicate his own personal rights, and it therefore does not constitute speech by a citizen on a matter of public concern as opposed to speech by an employee on a matter of personal interest.

Plaintiff's citation to *Zehner v. Jordan-Elbridge Board of Educ.*, 11-CV-1202, 2019 WL 4083040 (N.D.N.Y. Aug. 29, 2019) (Mordue, J.), does not lend any credence to his arguments to the contrary.  Most notably, the plaintiff in *Zehner* had indeed filed Article 78 petitions alleging violations of the Open Meetings Law, but, unlike in this case, those petitions resulted in a finding by a New York court that the school board had indeed repeatedly violated the Open Meetings Law.  *Zehner*, 2019 WL 4083040, at *4.  Here, Judge DelConte found that no violation of the Open Meetings Law occurred, and specifically found that Plaintiff's assertions were instead seeking redress for personal grievances against the members of the Board of Education who voted to place him on administrative leave and to have their resolutions related to that action rescinded.  (Dkt. No. 41, Attach. 1, at 6-10.)  Further, to the extent that Plaintiff appears to argue that *Zehner* stands for the point of law that alleging a violation of the Open Meetings Law

47

*always* would constitute a matter of public concern, that argument is simply not supported by *Zehner* itself.  Rather, the discussion of the procedural history in *Zehner* shows that the plaintiff's first Article 78 petition was brought not to vindicate any personal right, but rather to protest the manner in which a new interim superintendent was appointed; notably, the plaintiff in that case was not the superintendent being replaced and was not protesting any employment action taken against him personally related to that petition.  *See Zehner v. Board of Educ. of Jordan Elbridge Cent. Sch. Dist.*, 958 N.Y.S.2d 311 (N.Y. Sup. Ct. Onondaga Cnty. Oct.1, 2010).  The facts of *Zehner* are therefore not "nearly identical" to those presented here, and are, in fact, materially distinguishable.

Because Plaintiff has not plausibly suggested through the factual allegations of his Amended Complaint that he engaged in speech as a citizen on a matter of public concern, his First Amendment retaliation claims against the moving Defendants must be dismissed.

**B.    Disposition of the Remaining Claims in This Action**

Under the circumstances, the Court is inclined to dismiss Plaintiff's remaining state law claims without prejudice to refiling in the appropriate state court within the applicable limitations period.  *See Traylor v. Town of Waterford*, No. 24-691, 2024 WL 4615599, at *2 (2d Cir. Oct. 30, 2024) (finding that district court's dismissing state claims due to declining to exercise supplemental jurisdiction could not be construed as dismissing those claims with prejudice because a dismissal for lack of jurisdiction must be without prejudice) (citing Fed. R. Civ. P. 41[b] and *Miller v. Brightstar Asia, Ltd*., 43 F.4th 112, 126 [2d Cir. 2022]).

 Section 1367 of Title 28 of the United States Code permits a district court to decline to exercise supplemental jurisdiction for state law claims where, in relevant part, the court "has

48

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has recently stated that, in such a context "although supplemental jurisdiction persists, the district court need not exercise it: Instead, the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. --, 2025 WL 96212, at *5 (2025) (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 [1966]). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir 2006) (citation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, although this litigation has been pending for two years, the Court observes that the Amended Complaint, which is the operative pleading, was filed on July 12, 2024, and the Court is currently deciding motions to dismiss (two of which were filed previously but supplemented as a result of the filing of the Amended Complaint, and one of which was filed for the first time in September 2024). Therefore, despite the fact that Defendant Padula has also filed a motion for summary judgment, this case is still in the fairly early stages of development from a procedural perspective. Furthermore, the remaining claims against the moving Defendants relate solely to New York tort and contract law.

However, the issue is not yet ripe for consideration considering that still pending before the Court are Plaintiff's federal claims against Defendants Knoop and Paul (who never filed a

motion to dismiss). Having said that, those remaining claims seem to be hanging on by a thread, appearing to suffer from the same pleading defects as Plaintiff's other federal claims discussed herein.

As a result, because neither Defendant Knoop nor Defendant Paul has filed a motion to dismiss, but the other motions to dismiss present meritorious arguments that appear to apply to Plaintiff's federal claims against them, the Court finds that this is one of the rare circumstances in which Plaintiff should be ordered to, within fourteen days, show cause why those arguments should not also be applied to, and result in the dismissal of, his federal claims against Defendants Knoop and Paul. *See, e.g., E.A. Sween Co., Inc. v. A & M Deli Express Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019) (affirming a *sua sponte* dismissal of a complaint of a counseled plaintiff under Fed. R. Civ. P. 12[b][6], where the plaintiff was given notice and an opportunity to be heard); 5B C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 & n.24 (4th ed. 2024) ("[T]he district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.") (citing Third, Fourth and Fifth Circuit cases approving of a *sua sponte* dismissal of a complaint of a counseled plaintiff under Fed. R. Civ. P. 12[b][6]).[14]

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motions to dismiss and for judgment on the pleadings (Dkt. Nos. 26, 35, 107) are **GRANTED in part**, such that Plaintiff's federal claims against all

---

[14]     *See also Salvani v. InvestorsHub.com, Inc*., 628 F. App'x 784, 785 (2d Cir. 2015) (affirming a *sua sponte* dismissal of a complaint of a counseled plaintiff under Fed. R. Civ. P. 12[b][6]); *Leonhard v. U.S*., 633 F.2d 599, 609, n.11 (2d Cir. 1980) (noting, in a case involving a counseled plaintiff, that "[t]he district court has the power to dismiss a complaint *sua sponte* for failure to state a claim.").

Defendants other than Defendants Knoop and Paul are **<u>DISMISSED</u> with prejudice**; and it is further

 **ORDERED** that Defendant Padula's motion for summary judgment (Dkt. No. 75) and Plaintiff's cross-motion for summary judgment (Dkt. No. 84) are **<u>DENIED</u> as moot** with regard to Plaintiff's federal claims against Defendant Padula, and **<u>DENIED</u> without prejudice** with regard to Plaintiff's state-law claims against Defendant Padula (in the interest of judicial economy, convenience, fairness, and comity); and it is further

 **ORDERED** that Plaintiff is given **FOURTEEN (14) DAYS** from the entry of this Decision and Order by which to **SHOW CAUSE** why the moving Defendants' Fed. R. Civ. P. 12(b)(6) arguments regarding Plaintiff's federal claims against them should not also be applied to, and result in the dismissal of, Plaintiff's federal claims against Defendants Knoop and Paul.

Dated: February 27, 2025
  Syracuse, New York

Glenn T. Suddaby
U.S. District Judge